IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MAXELL HOLDINGS, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 6:21-cv-00347-ADA |
| | ) | |
| AMPEREX TECHNOLOGY LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

## AMPEREX TECHNOLOGY LIMITED'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER OR STAY

# PUBLIC VERSION

## TABLE OF CONTENTS

I.    BACKGROUND ................................................................................................. 1

II.   ARGUMENT ..................................................................................................... 3

    A.    This Later-Filed Action Should Be Dismissed Under the First to File Rule .......... 4

    B.    This Action Should Be Dismissed for Want of Personal Jurisdiction Over
        ATL in This District.............................................................................. 6

        1.    There Is No General Jurisdiction Over ATL in W.D. Tex. ........................ 7
        2.    There Is No Specific Jurisdiction Over ATL in W.D. Tex......................... 8
        3.    There Is No Personal Jurisdiction Over ATL Under Rule 4(k)(2) ........... 11

    C.    This Action Should Be Dismissed Because ATL Has Not Properly Been
        Served With Process ............................................................................ 13

    D.    Alternatively, This Action Should Be Transferred to the District of New
        Jersey Under the First to File Rule or 28 U.S.C. § 1404(a) ................................ 16

    E.    Alternatively, This Action Should Be Stayed Pending Resolution of the
        New Jersey Action ............................................................................... 20

III.   CONCLUSION ................................................................................................. 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acuna v. CMH Mfg.*,
    No. A-11-CA-927-SS, 2011 U.S. Dist. LEXIS 166450 (W.D. Tex. Dec. 19,
    2011) ..................................................................................................................16

*Aetna Business Credit Inc. v. Universal Decor and Interior Design*,
    635 F.2d 434 (5th Cir. 1981) ..............................................................................13

*AFTG–TG, LLC v. Nuvoton Tech. Corp.*,
    689 F.3d 1358 (Fed. Cir. 2012)...........................................................................10

*Albany Intern. Corp. v. Yamauchi Corp.*,
    978 F. Supp. 2d 138 (N.D.N.Y. 2013)..................................................................12

*Amperex Technology Limited v. Maxell, Ltd.*,
    No. 2:21-cv-08461-KM-MF (D.N.J. filed Apr. 6, 2021).........................................1

*Amperex Technology Limited v. Maxell, Ltd.*,
    No. 2:21-cv-08461-KM-MF, Dkt. No. 12 (D.N.J.) ................................................1

*Asahi Metal Industry Co. v. Superior Court*,
    480 U.S. 102 (1987)..............................................................................................10

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009)..............................................................................7

*Bank v. Palmer*,
    No. A-13-CA-831-SS, 2014 U.S. Dist. LEXIS 11270 (W.D. Tex. Jan. 30,
    2014) ............................................................................................................17, 18

*Bellorin v. Bridgestone/Firestone, Inc.*,
    236 F. Supp. 2d 670 (W.D. Tex. 2001)...................................................................7

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994)..............................................................................10

*Bradford Co. v. Conteyor North America, Inc.*,
    603 F.3d 1262 (2010)...........................................................................................12

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*,
    137 S. Ct. 1773 (2017)...........................................................................................7

*Cadle Co. v. Whataburger of Alice, Inc.*,
    174 F.3d 599 (5th Cir. 1999) ..........................................................................4, 20

*Carey Int'l, Inc. v. Carey Limo Serv., Inc.*,
    No. 10-12142, 2011 U.S. Dist. LEXIS 108218, 2011 WL 9819989 (D. Mass.
    Sept. 22, 2011) (Wolf, J.).....................................................................................16

*Castillo v. Hongjin Crown Corp.*,
   Civil Action No. DR-08-CV-00031-AML-VRG, 2008 U.S. Dist. LEXIS
   130686 (W.D. Tex. Oct. 27, 2008) ...............................................................................13, 14

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
   395 F.3d 1315 (Fed. Cir. 2005)................................................................................10

*CSPC Dophen Corp. v. Zhixiang Hu*,
   No. 2:17-cv-1895 MCE DB PS, 2018 U.S. Dist. LEXIS 200697 (E.D. Cal.
   Nov. 26, 2018) ...............................................................................................15

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).........................................................................................7, 8

*Denlinger v. Chinadotcom Corp.*,
   110 Cal. App. 4th 1396, 1405, 2 Cal. Rptr. 3d 530 (2003).......................................14

*Dobbins v. Kroger Co.*,
   No. 3:08-CV-1206-N, 2009 WL 2776665 (N.D. Tex. Aug. 31, 2009) .................................16

*Douglas v. Pilgrim Senior Citizens Hous. Dev. Corp.*,
   No. H-11-3637, 2012 U.S. Dist. LEXIS 111924 (S.D. Tex. Aug. 9, 2012) .....................15, 16

*Forté v. Sanofi-Aventis United States*,
   No. A-11-CA-017 LY, 2011 U.S. Dist. LEXIS 175243 (W.D. Tex. Mar. 9,
   2011) .........................................................................................................17, 20

*Freescale Semiconductor, Inc. v. Amtran Tech. Co., Ltd.*,
   A-12-CV-644-LY, 2013 WL 12121034 (W.D. Tex. June 12, 2013) .......................................9

*Freescale Semiconductor, Inc. v. Amtran Tech. Co.*,
   No. A-12-CV-644-LY, 2014 WL 1603665 (W.D. Tex. Mar. 19, 2014) .................................11

*Genetic Veterinary Scis., Inc. v. Laboklin GMBH & Co.*,
   933 F.3d 1302 (Fed. Cir. 2019)............................................................................7, 9

*Glencore Ltd. v. Occidental Arg. Expl. & Prod.*,
   No. H-11-3070, 2012 U.S. Dist. LEXIS 21971 (S.D. Tex. Feb. 22, 2012) ............................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)...........................................................................................7

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
   824 F.2d 953 (Fed. Cir. 1987).................................................................................6

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1974)...............................................17

*HCT Packaging v. TM Int'l Trading Ltd.*,
   No. CV 13-08443 RGK, 2014 U.S. Dist. LEXIS 199847 (C.D. Cal. Mar. 10,
   2014) .......................................................................................................14, 15

*Ho v. Pinsukanjana*,
   No. 17-cv-06520-PJH, 2019 U.S. Dist. LEXIS 96295 (N.D. Cal. June 7, 2019)..............14, 15

*Inamed Corp. v. Kuzmak*,
    249 F.3d 1356 (Fed. Cir. 2001)...................................................................................9

*Interactive Life Forms, LLC v. Weng*,
    No. A-12-CA-1182-SS, 2013 U.S. Dist. LEXIS 193772 (W.D. Tex. Apr. 8,
    2013) .........................................................................................................................18

*Iowa State Univ. Rsch. Found., Inc. v. Greater Continents Inc.*,
    81 F. App'x 344 (Fed. Cir. 2003) ................................................................................6

*James Avery Craftsman, Inc. v. Sam Moon Trading Enters.*,
    No. SA-16-cv-00463-OLG, 2018 U.S. Dist. LEXIS 219083 (W.D. Tex. July
    5, 2018) .....................................................................................................................14

*IN RE: LITHIUM ION BATTERIES*,
    No. 4:13-md-02420-YGR (N.D. Cal. Nov. 21, 2014) ...............................................19

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
    890 F.3d 995 (Fed. Cir. 2018).....................................................................................9

*Mann Mfg., Inc. v. Hortex, Inc.*,
    439 F.2d 403 (5th Cir. 1971) .............................................................................4, 5, 20

*Maxell, Ltd. v. ZTE Corp.*,
    No. 5:18-CV-00033-RWS, Dkt. No. 43, Dkt. No. 57 (E.D. Tex.) .............................3

*Merial Ltd. v. Cipla Ltd.*,
    681 F.3d 1283 (Fed. Cir. 2012)..................................................................................12

*Mondis Technology Ltd. v. LG Electronics Inc. et al.*,
    No. 2:15-cv-04431-SRC-CLW (D.N.J.) ............................................................2, 3, 19

*Monkton Ins. Servs. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) .......................................................................................8

*Naranjo v. Universal Sur. of Am.*,
    679 F. Supp. 2d 787 (S.D. Tex. 2010) .......................................................................13

*Needbasedapps, LLC v. Robbins Research Int'l, Inc.*,
    926 F. Supp. 2d 907 (W.D. Tex. 2013).....................................................................4, 5

*NGV Gaming, Ltd. v. Upstream Point Molate*,
    LLC, Nos. C-04-3955 & C-05-1605, 2009 U.S. Dist. LEXIS 117944, 2009
    WL 4258550 (N.D. Cal. Nov. 24, 2009) ...................................................................16

*Rennenger v. Manley Toy Direct L.L.C.*,
    No. 4:10-cv-00400, 2013 U.S. Dist. LEXIS 197078 (S.D. Iowa July 18, 2013).....................15

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 950 ...............................................................................................................4

*Scorpcast LLC v. MG Freesites Ltd.*,
    No. 6:20-cv-00877-ADA, Dkt. No. 56 (W.D. Tex. June 21, 2021) ..........................20

*Silicon Labs., Inc. v. Cresta Tech. Corp.*,
    A-14-CA-318-SS, 2014 WL 3530817 (W.D. Tex. July 14, 2014) (S. Sparks) ...............10, 11

*Sirius Comput. Sols., Inc. v. Sparks*,
    138 F. Supp. 3d 821 (W.D. Tex. 2015)............................................................4, 20

*SpaceCo Bus. Solutions, Inc. v. Mass Engineered Design, Inc.*,
    942 F.Supp.2d 1148 (D. Colo. 2013).......................................................12

*Sutter Corp. v. P&P Indus., Inc.*,
    125 F.3d 914 (5th Cir. 1997) ...............................................................4, 20

*Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*,
    815 F. Supp. 994 (E.D. Tex. 1993).............................................................5

*Touchcom, Inc. v. Bereskin & Parr*,
    574 F.3d 1403 (Fed. Cir. 2009)..............................................................12

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..................................................................17

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1998)..............................................................................14

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1985) .................................................................4, 20

*WesternGeco LLC v. Ion Geophysical Corp.*,
    No. H-09-1827, 2010 U.S. Dist. LEXIS 54524 (S.D. Tex. June 2, 2010)...............16

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
    848 F.3d 1346 (Fed. Cir. 2017)...............................................................9

*Yeti Coolers, LLC v. Beavertail Prods.*,
    LLC, No. 1-15-CV-415 RP, 2015 U.S. Dist. LEXIS 106177 (W.D. Tex. Aug.
    12, 2015) .............................................................................................17

**Statutes**

28 U.S.C. § 1404...................................................................................16

28 U.S.C. § 1404(a) ..............................................................................17

**Other Authorities**

Fed. R. Civ. P. 4(f)................................................................................13

Fed. R. Civ. P. 4(h)(1)(B) .......................................................................15

Fed. R. Civ. P. 4(k)(2)........................................................................11, 12, 13

Fed. R. Civ. P. 12(b)(2)........................................................................7, 13

Defendant Amperex Technology Limited ("ATL") respectfully requests that the Court dismiss Plaintiff Maxell Holdings, Ltd.'s ("Maxell") Complaint for Patent Infringement. Alternatively, ATL requests that this Court either transfer the case to the U.S. District Court for the District of New Jersey, where ATL has first-filed a declaratory judgment action of non-infringement against Maxell involving the same patents and accused products, or stay this case pending resolution of the motions before the New Jersey court. *See Amperex Technology Limited v. Maxell, Ltd.*, No. 2:21-cv-08461-KM-MF (D.N.J. filed Apr. 6, 2021).

## I.    **BACKGROUND**

In March 2020, Maxell contacted ATL and alleged that ATL's lithium-ion battery products infringe its U.S. Patent Nos. 8,691,446, 9,077,035, 9,166,251, and 9,350,019 (collectively, the "Maxell LIB Patents"). Exhibit 1, Declaration of Hanjing (Phyllis) Xiao ("ATL Decl.") ¶¶ 7, 8; *see Amperex Technology Limited v. Maxell, Ltd.*, No. 2:21-cv-08461-KM-MF, Dkt. No. 12 at ¶ 25 (D.N.J.) ("ATL Am. Compl."). From May 2020 until February 2021, ATL and Maxell engaged in several rounds of discussions regarding the Maxell LIB Patents and Maxell's demands that ATL license the Maxell LIB Patents. ATL Decl. ¶ 9; *see* ATL Am. Compl., ¶ 26. ███████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████ By March 26, 2021, no resolution was reached between the parties. Dkt. No. 1, ¶ 9. On April 6, 2021, ATL filed its complaint for a declaratory judgment of non-infringement in the District of New Jersey, *Amperex v. Maxell*, No. 2:21-cv-08461-KM-MF (D.N.J.) (the "NJ Action"). While Maxell purports to have filed its Complaint "reluctantly," Dkt. No. 1 at ¶1, it was a late attempt to forum shop its dispute after ATL already filed the NJ Action.

At the time that the controversy between the parties over Maxell's allegation that ATL's lithium-ion battery infringed the Maxell LIB Patents began, ██████████████████████████



on March 26, 2021. On that same date, Maxell sent a letter to ATL, consciously choosing

not to litigate and voluntarily risking that ATL would be the first to file an action to resolve the

parties dispute. In its letter, Maxell stated that if the parties did not enter a licensing agreement by

April 9, 2021, Maxell would "be left with no choice but to pursue litigation." ATL Decl. ¶ 14. In

light of this response, which equated to a refusal by Maxell to continue the status quo, ATL

determined that amicable resolution of the dispute before litigation was impossible. ATL Decl. ¶

15.

On April 6, 2021, instead of succumbing to Maxell's unreasonable allegations and

demands, ATL filed its declaratory judgement action in the District of New Jersey, where Maxell's

wholly-owned subsidiary and U.S. headquarters is located and where Maxell is currently a plaintiff

in another patent action. *See* ATL Decl. ¶ 15; Ex. 3-B; *Mondis Technology Ltd. v. LG Electronics Inc. et al.*, No. 2:15-cv-04431-SRC-CLW (D.N.J.).

Two days later, on April 8, 2021, Maxell "reluctantly" filed this duplicate action asserting infringement of the same four Maxell LIB Patents by the same lithium-ion battery products identified in ATL's NJ Action. *Compare* Dkt. No. 1 *with* ATL Am. Complaint. On April 15, 2021, ATL filed its Motion to Enjoin Maxell's Later-Filed Infringement Action. NJ Action, Dkt. Nos. 7, 17, 22, 23 (fully briefed as of May 12, 2021).

To date, Maxell refuses to accept service in the NJ Action, and ATL has filed a Motion for Alternative Service. NJ Action, Dkt. Nos. 10, 33, 39 (fully briefed as of June 1, 2021). Maxell's gamesmanship is apparent even in opposing ATL's Motion for Alternative Service, where it argues against the same positions it has taken as a plaintiff when making identical motions for alternative service against Chinese entities. *Id.*; *see also Maxell, Ltd. v. ZTE Corp.*, No. 5:18-CV-00033-RWS, Dkt. No. 43 at 4, Dkt. No. 57 at 1 (E.D. Tex.). At the same time, Maxell attempted to serve a copy of the summons and Complaint in this case on ATL in Hong Kong. *See* Dkt. No. 6. Two individuals personally delivered a package to ATL's Hong Kong office. *See* Exhibit 2, Declaration of Pui Yan Wong ("Wong Decl.") ¶ 5. An accounting assistant accepted the package per normal procedure for acknowledging deliveries to the office. Wong Decl. ¶¶ 3, 8. She was not informed of the content of the package or authorized by ATL to accept service of process. Wong Decl. ¶¶ 7, 9, 11, 12.

## II.  ARGUMENT

The Court should adhere to the first to file rule and dismiss Maxell's later-filed action because it is duplicative of ATL's NJ Action. The Court should also dismiss this action because there is no personal jurisdiction over ATL in the Western District of Texas, and Maxell improperly served ATL in violation of the Hague Convention and relevant service laws. Alternatively, the Court should transfer to the District of New Jersey, or stay this action pending the NJ Action.

3

### A.    This Later-Filed Action Should Be Dismissed Under the First to File Rule

"The Fifth Circuit adheres to the 'first to file' rule." *Sirius Comput. Sols., Inc. v. Sparks*, 138 F. Supp. 3d 821, 827 (W.D. Tex. 2015) (referencing *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)). "If the court in the later-filed action finds that the issues involved are likely to substantially overlap, it is up to the first-filed court to resolve the question of whether both cases should proceed." *Sirius Comput. Sols.*, 138 F. Supp. 3d at 827 (referencing *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)). In other words, "[t]he first to file rule not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Cadle Co.*, 174 F.3d at 606 (cleaned up); *see also Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997) (holding that the district court in the second-filed action abused its discretion in denying a motion to dismiss, transfer, or stay proceedings to allow the first-filed court to rule).

As this Court has recognized, "only 'compelling circumstances' can justify departure from [the first to file rule]." *Needbasedapps, LLC v. Robbins Research Int'l, Inc.*, 926 F. Supp. 2d 907, 916 (W.D. Tex. 2013). "The first to file rule is grounded in principles of comity and sound judicial administration. . . . [requiring] federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *Save Power*, 121 F.3d at 950 (cleaned up). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result. . . . To avoid these ills, a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." *West Gulf Martime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).

Here, ATL's NJ Action was filed first, and Maxell's later-filed Complaint involves identical issues, asserted patents, and accused lithium-ion battery products. ATL has already presented the New Jersey court with a Motion to Enjoin this case, which is fully briefed and pending decision. Maxell has also already responded to ATL's complaint with a motion to dismiss or transfer the case to this District, which is fully briefed and pending decision in the New Jersey court. Therefore, this Court should dismiss this later-filed, duplicative action and permit the New Jersey court to proceed with the resolution of the parties' dispute. *See Needbasedapps, LLC*, 926 F. Supp. 2d at 918 ("Because it is clear that (1) there is a 'likelihood of a substantial overlap' between these two actions and that (2) the California court is the court of first filing, this Court must permit the California court to determine which action should proceed. . . . this Court, as the court of second filing, may not make such a determination itself. *See Mann Mfg.*, 439 F.2d at 408 n.6 ('Once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the [court in the second-filed case] to resolve the question of whether both should be allowed to proceed'; that authority belonged to the court in the first-filed case.).''). "This Court simply may not, consistent with the principles of comity and conservation of judicial resources, usurp the first-filed court's role." *Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 999 (E.D. Tex. 1993).

Moreover, there is no justification for departing from the first to file rule. ATL properly and in good faith brought its declaratory action for non-infringement before the New Jersey court to resolve the parties' dispute. After a year of discussions, Maxell ███████████████████████ █████████████████████████████████████ chose to send ATL a letter "to resolve this matter amicably" instead of filing suit. *See* Ex. 3-A; *see also* Ex. 1-B. Maxell did not provide a draft complaint to ATL or concretely state that it would file a lawsuit on a certain date, but merely

threatened that if ATL did not kowtow to its outlandish licensing demands by April 9, 2021, Maxell would "be left with no choice but to pursue litigation." Ex. 1-B. By sending this open-ended letter, Maxell knowingly and voluntarily risked that ATL would file a declaratory judgment action based on their existing and ongoing controversy ████████████████████████████████████████ ████████████████████████████████████████████████████████ Maxell did not convey concrete and specific knowledge that suit was imminent, and it cannot somehow bootstrap the facts to block ATL from enforcing its rights in its chosen forum.

████████████████████████████████████████ when the parties had not resolved their dispute, it was left with no choice other than to clear its name and reputation in a court of law. Maxell's allegations cast inappropriate uncertainty over ATL and its products, and ATL could not allow its customers to be subject to meritless claims of infringement by Maxell based on ATL products. ATL Decl. ¶ 13; *see, e.g.*, *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) (the intended purpose of a declaratory judgment action is "to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights."). ATL simply filed first and filed in the jurisdiction where Maxell has its wholly-owned subsidiary and U.S. headquarters, and has submitted to jurisdiction as the plaintiff in a separate patent litigation. Maxell's later-filed, duplicative action in this District, which has no connection to the parties or their dispute, is a clear attempt by Maxell to forum shop the parties' dispute.

Therefore, this Court should dismiss Maxell's Complaint pursuant to the first to file rule.

**B.    This Action Should Be Dismissed for Want of Personal Jurisdiction Over ATL in This District**

"When personal jurisdiction is challenged, . . . the plaintiff has the burden of showing that jurisdiction exists." *Iowa State Univ. Rsch. Found., Inc. v. Greater Continents Inc.*, 81 F. App'x 344, 349 (Fed. Cir. 2003). Maxell's complaint fails to allege facts that even come close to meeting

its burden to establish personal jurisdiction over ATL, and the Court should dismiss this action under Rule 12(b)(2). Indeed, ATL has far less contacts in this District than Maxell has in New Jersey, where they have operated a U.S. subsidiary for nearly 50 years.

Personal jurisdiction in patent infringement cases is governed by Federal Circuit law. *Genetic Veterinary Scis., Inc. v. Laboklin GMBH & Co.*, 933 F.3d 1302, 1309 (Fed. Cir. 2019). "Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). Since Texas's long-arm statute has been interpreted as extending to the limits of federal due process, the personal jurisdiction analysis collapses into the single inquiry of whether the exercise of personal jurisdiction is consistent with the requirements of due process under the Fourteenth Amendment. *Bellorin v. Bridgestone/Firestone, Inc.*, 236 F. Supp. 2d 670, 678 (W.D. Tex. 2001).

"[T]he paradigm forum for the exercise of general jurisdiction . . . for a corporation [is the place] in which the corporation is fairly regarded as at home." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "In order for a . . . court to exercise specific jurisdiction, 'the **suit**' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). Here, the Court lacks both types of personal jurisdiction.

### 1.    There Is No General Jurisdiction Over ATL in W.D. Tex.

To exercise general jurisdiction, a defendant's contacts with the forum must be "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). For a corporation, the place of incorporation and principal

place of business are "paradig[m] . . . bases for general jurisdiction." *Id.* at 137 (citations omitted) (alteration in original). Generally, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (finding that general jurisdiction in Texas was improper where a bank was a Cayman bank incorporated in the Cayman Islands with its principal place of business in George Town, Grand Cayman).

ATL is a Hong Kong corporation with its principal place of business in Hong Kong. ATL Decl. ¶ 5. ATL is not incorporated or registered to do business in Texas, has no office or employees in Texas, does not own or lease any real property in Texas, does not maintain bank accounts in Texas, and does not pay taxes in Texas. ATL Decl. ¶¶ 16-20. Maxell's conclusory allegations in its Complaint generically allege that ATL does business in Texas, primarily relying on alleged facts that ATL has filed patents in the United States and makes components of products that "can be found in various products all throughout the United States." *See* Compl. ¶¶ 15–52. Even if ATL conducted business in Texas, simply "doing business" does not, on its own, rise to the level of being "at home." *See Daimler*, 571 U.S. at 139 n.20 (noting that "at home" is not synonymous with "doing business"). Maxell's allegations fall short of describing "continuous and systematic" contacts that would overcome ATL's lack of nexus to Texas and render it "at home" here. Thus, there is no general jurisdiction over ATL in this District.

## 2.    There Is No Specific Jurisdiction Over ATL in W.D. Tex.

For specific jurisdiction, the Federal Circuit "ha[s] summarized the Supreme Court's due process jurisprudence in a three-factor test: (1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (quoting

*Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)) (cleaned up). "The plaintiff bears the burden as to the first two requirements . . . ." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1000 (Fed. Cir. 2018). "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed*, 249 F.3d at 1360. After the plaintiff has met its burden of proof under the first two factors, "then the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Freescale Semiconductor, Inc. v. Amtran Tech. Co., Ltd.*, A-12-CV-644-LY, 2013 WL 12121034, at *2 (W.D. Tex. June 12, 2013). The Federal Circuit has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Genetic Veterinary Scis., Inc. v. Laboklin GMBH & Co.*, 933 F.3d 1302, 1310 (Fed. Cir. 2019).

To establish specific jurisdiction in this Court, Maxell relies entirely on a stream-of-commerce theory by alleging that ATL places lithium-ion batteries ("LIBs") into the stream of commerce via established distribution channels with knowledge and/or intent that those LIBs will be sold in Texas. *See* Compl. ¶ 19. However, Maxell relies on purported evidence from 2014, which is outside of the relevant damages timeframe for this case, and fails to plead sufficient facts to establish that such a distribution channel exists, including facts that reflect ATL's intent to target the Texas market, or facts that support that ATL was even aware that its products would be sold in Texas. Therefore, Maxell's complaint fails to meet the Texas Supreme Court's and the Federal Circuit's standards for establishing personal jurisdiction under the stream-of-commerce theory.

The Federal Circuit considers whether the plaintiff can establish minimum contacts—or has failed to establish minimum contacts—under *both* theories articulated by the Supreme Court

in *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102 (1987), considering goods placed in the stream of commerce that can be foreseen as sold in the forum state where the product was marketed, *id.* at 117-18, and additionally requiring "an action of the defendant purposefully directed toward the forum State," *id.* at 112. *See Silicon Labs., Inc. v. Cresta Tech. Corp.*, A-14-CA-318-SS, 2014 WL 3530817, at *2 (W.D. Tex. July 14, 2014) (S. Sparks) (citing *AFTG–TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012)).

While specific jurisdiction has been found where a foreign manufacturer purposefully shipped products through an established distribution channel with the expectation that those products would be sold in the forum, *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-67 (Fed. Cir. 1994), the plaintiff faces a more difficult hurdle, in a case such as this, where the defendant is a component manufacturer whose products are not directly sold to consumers but rather incorporated into downstream products for future sale. *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1321–24 (Fed. Cir. 2005). In *Comisseriat*, even though the Court concluded that the distribution channel suggested a flow of the defendant's products into the forum that was "regular and anticipated," there was no evidence of any additional conduct[1] by the defendant that would satisfy the requisite standard of intent and purpose to serve the forum state. *Id.* at 1322.

Following this case line, Judges Yeakel and Sparks of the Western District of Texas have dismissed cases for lack of personal jurisdiction with facts pleaded similarly to Maxell's

---

[1] "Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112.

complaint. In *Freescale Semiconductor*, Judge Yeakel concluded jurisdiction could not be validly exercised over a Taiwanese company which exported chips to television manufacturers like Vizio for incorporation into products sold across the United States. *See Freescale Semiconductor, Inc. v. Amtran Tech. Co.*, No. A-12-CV-644-LY, 2014 WL 1603665, at \*5-6 (W.D. Tex. Mar. 19, 2014) (declining to exercise personal jurisdiction because due process requires more than generally targeting the North American market as a whole). In *Silicon Labs*, Judge Sparks dismissed the plaintiff's complaint without jurisdictional discovery because the plaintiff failed to carry its burden under either stream of commerce theory. *Silicon Labs., Inc. v. Cresta Tech. Corp.*, A-14-CA-318-SS, 2014 WL 3530817, at \*3-4 (W.D. Tex. July 14, 2014) ("the mere fact [defendant's] chips are found in products manufactured by third parties and sold in national retail chains is insufficient to subject [defendant] to the burdens of being haled into court in Texas.").

Just as in *Silicon Labs* and *Freescale Semiconductor*, "Texas's connection to this litigation is no more direct than Washington's or North Dakota's or Vermont's . . . ." *See id*. Maxell fails to plead any facts supporting its conclusory allegations of a distributional channel of infringing products to Texas. Instead, Maxell generally alleges that certain products manufactured by Google and Dell contain ATL LIBs and are sold online or by nationwide retailers. Under the stream of commerce theory upon which Maxell solely relies to establish personal jurisdiction, Maxell has clearly failed to meet its burden under either *Asahi*-based standard. Therefore, this Court should dismiss Maxell's action without jurisdictional discovery.

### 3.    There Is No Personal Jurisdiction Over ATL Under Rule 4(k)(2)

Maxell alternatively asks the Court to find that it has jurisdiction over ATL pursuant to Rule 4(k)(2). "[F]or a court to exercise personal jurisdiction over a defendant under that rule, the plaintiff's claim must arise under federal law, the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction, and exercise of jurisdiction must comport with due

process." *Bradford Co. v. Conteyor North America, Inc.*, 603 F.3d 1262 (2010). The Federal

Circuit has adopted the approach that a district court may exercise jurisdiction, pursuant to Rule

4(k)(2), over a foreign defendant who has sufficient contacts with the United States, but contends

that he cannot be sued in the forum state and refuses to identify any other state where suit is

possible. *Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1415 (Fed. Cir. 2009). Although

ATL does not concede that it has sufficient contacts in the United States, it has already filed the

NJ Action, thereby consenting to jurisdiction in New Jersey. As such, Rule 4(k)(2) cannot be

applied here to establish jurisdiction over ATL in Texas. *See id.*[2]

This exact scenario was resolved in the first-filer's favor in *Albany Intern. Corp. v.*

*Yamauchi Corp.*, 978 F. Supp. 2d 138, 146 (N.D.N.Y. 2013). In *Albany International*, the

defendant had previously filed an action in California the day before the plaintiff filed its action in

New York. *Id.* The court reasoned that the defendant was "indisputably subject to the jurisdiction

of the court in the California action at the time plaintiff filed this action." and "[b]ecause

jurisdiction is assessed at the time of filing," plaintiff failed to meet prong two of Rule 4(k)(2) and

make a prima-facie jurisdictional showing; therefore, the Court found that the exercise of personal

jurisdiction was not warranted. *Id.* For the same reasons, Maxell has failed to make a prima-facie

showing of jurisdiction under Rule 4(k)(2) and its case should be dismissed. *See also SpaceCo*

*Bus. Solutions, Inc. v. Mass Engineered Design, Inc.*, 942 F.Supp.2d 1148, 1156–57 (D. Colo.

2013) (finding Rule 4(k)(2) inapplicable where plaintiffs sought to assert claims against foreign

---

[2] Moreover, as discussed *infra* in Section D, Maxell is subject to the New Jersey court's
jurisdiction. *See also* NJ Action, Dkt. No. 56. Because this action post-dates the NJ Action, Maxell
cannot argue that under Rule 4(k)(2) the New Jersey court cannot exercise jurisdiction over Maxell
because it has now consented to the jurisdiction of this Court. *See Albany Intern. Corp. v.*
*Yamauchi Corp.*, 978 F. Supp. 2d 138, 146 (N.D.N.Y. 2013) (reasoning that a foreign defendant
"may not defeat jurisdiction merely by naming a state where it 'would have agreed' to suit") (citing
*Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283, 1294–95 (Fed. Cir. 2012)).

defendants that were "closely related" to claims originally brought in the Eastern District of Texas and noting that the foreign defendants had previously consented to suit there).

Because Maxell has failed to demonstrate that the Court can exercise either general jurisdiction or specific jurisdiction over ATL, this action should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

### C.    This Action Should Be Dismissed Because ATL Has Not Properly Been Served With Process

"Federal Rule of Civil Procedure 12(b)(5) authorizes the dismissal of an action for insufficient service of process." *Glencore Ltd. v. Occidental Arg. Expl. & Prod.*, No. H-11-3070, 2012 U.S. Dist. LEXIS 21971, at *5 (S.D. Tex. Feb. 22, 2012). "A federal court is without personal jurisdiction over a defendant unless the defendant has been served with process in accordance with Federal Rule of Civil Procedure 4." *Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787, 795 (S.D. Tex. 2010). "When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity." *Naranjo*, 679 F. Supp. 2d at 795 (referencing *Aetna Business Credit Inc. v. Universal Decor and Interior Design*, 635 F.2d 434, 435 (5th Cir. 1981)). Maxell's purported service on ATL in Hong Kong was insufficient because (1) Maxell failed to properly serve ATL under the Hague Convention and (2) the individual who purportedly accepted service was not authorized to do so on behalf of ATL.

Under Federal Rule of Civil Procedure 4(f), a foreign corporation may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f); *Castillo v. Hongjin Crown Corp.*, Civil Action No. DR-08-CV-00031-AML-VRG, 2008 U.S. Dist. LEXIS 130686, at *5 (W.D. Tex. Oct. 27, 2008). Use of the Hague Convention procedures, when available, is mandatory if the documents must be transmitted

abroad to effect service. *Id.*; *see Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1998).

"The primary method of service authorized by the [Hague] Convention requires service through a member state's 'Central Authority. . . ' The Central Authority of each member state may then execute service pursuant to its own internal laws, or according to a particular method requested by the requesting state." *James Avery Craftsman, Inc. v. Sam Moon Trading Enters.*, No. SA-16-cv-00463-OLG, 2018 U.S. Dist. LEXIS 219083, at *9 (W.D. Tex. July 5, 2018). "It is mandatory to apply the Hague Convention when both countries are signatories to the Convention. . . . Hong Kong and the United States are both signatories to the Hague Convention so the rules of the Hague Convention apply." *HCT Packaging v. TM Int'l Trading Ltd.*, No. CV 13-08443 RGK (SHx), 2014 U.S. Dist. LEXIS 199847, at *16 (C.D. Cal. Mar. 10, 2014) (cleaned up).

"Article 10 of the Hague Convention only authorizes personal service if not objected to by the signatory country." *Ho v. Pinsukanjana*, No. 17-cv-06520-PJH, 2019 U.S. Dist. LEXIS 96295, at *8-9 (N.D. Cal. June 7, 2019); *see* Hague Convention, art. 10(b), (c), Nov. 15, 1965, 20 U.S.T. 361 (allowing "judicial officers, officials, or other competent persons to effect service"). Critically, Hong Kong has objected to subsections (b) and (c) of Article 10. *Denlinger v. Chinadotcom Corp.*, 110 Cal. App. 4th 1396, 1405, 2 Cal. Rptr. 3d 530, 538 (2003) ("[I]n a June 10, 1997 notification, the People's Republic of China stated that, with respect to Hong Kong, it was objecting to article 10(b) and article 10(c)."); *HCT Packaging*, 2014 U.S. Dist. LEXIS 199847, at *16 ("Hong Kong objected to article 10(b)."). Therefore, Article 10 does not authorize Maxell to personally serve ATL in Hong Kong. Since Maxell attempted to effect personal service instead of requesting assistance from Hong Kong Central Authority, Maxell failed to properly serve ATL under the Hague Convention. *See, e.g.*, *Pinsukanja*, 2019 U.S. Dist. LEXIS 96295, at *10; *HCT Packaging*,

2014 U.S. Dist. LEXIS 199847, at *16; *CSPC Dophen Corp. v. Zhixiang Hu*, No. 2:17-cv-1895 MCE DB PS, 2018 U.S. Dist. LEXIS 200697, at *29 (E.D. Cal. Nov. 26, 2018).

Assuming *arguendo* that Maxell were authorized to effect personal service in Hong Kong, Maxell's service of process was still insufficient because the individual who purportedly accepted service was not authorized to accept service on behalf of ATL. "[S]ervice of process on a Hong Kong corporation is parallel to service of process on a corporation based in the United States." *Rennenger v. Manley Toy Direct L.L.C.*, No. 4:10-cv-00400, 2013 U.S. Dist. LEXIS 197078, at *8 (S.D. Iowa July 18, 2013). "Service of process may be completed by delivering a copy of the summons and the complaint to 'an officer, managing or general agent, or other agent authorized by appointment or by law to receive service of process.' Fed. R. Civ. P. 4(h)(1)(B)." *Douglas v. Pilgrim Senior Citizens Hous. Dev. Corp.*, No. H-11-3637, 2012 U.S. Dist. LEXIS 111924, at *3 (S.D. Tex. Aug. 9, 2012). The Fifth Circuit requires that the corporate entity sought to be served must have actually authorized the agent to accept service of process on its behalf. *Id.* at *3-4.

Here, Maxell's process server, Li Yuen Tung, allegedly personally delivered process to "a Chinese woman, who identified herself as Ms. Wong." Dkt. No. 6. However, the process server never inquired about Ms. Wong's full legal name, her title and relationship with ATL, or whether Ms. Wong had any authority at all to accept service on behalf of ATL. Wong Decl., ¶ 6. Furthermore, Maxell's process server never explained the content of the envelope that was delivered to Ms. Wong; nor did the package label indicate any information other than ATL's address. Wong Decl., ¶ 7; Ex. 2-A. Ms. Wong is an accounting assistant who is not an executive at ATL, has no executive responsibilities, and is not an agent authorized by ATL to accept legal service of process. Wong Decl., ¶¶ 3,12. Ms. Wong is simply the person who acknowledged receipt

of the envelope delivered to ATL's location according to ATL's normal package handling procedure. Wong Decl., ¶¶ 4, 8. This is insufficient service of process.

Maxell's purported service on ATL was not effective because Ms. Wong does not have the authority to accept service of process on behalf of ATL either by appointment or by law and is not an officer, director, or managing or general agent of ATL. *See, e.g.*, *WesternGeco LLC v. Ion Geophysical Corp.*, No. H-09-1827, 2010 U.S. Dist. LEXIS 54524, at *8-9 (S.D. Tex. June 2, 2010); *Douglas v. Pilgrim Senior Citizens Hous. Dev. Corp.*, No. H-11-3637, 2012 U.S. Dist. LEXIS 111924, at *4 (S.D. Tex. Aug. 9, 2012); *Dobbins v. Kroger Co.*, No. 3:08-CV-1206-N, 2009 WL 2776665, at *1 (N.D. Tex. Aug. 31, 2009); *NGV Gaming, Ltd. v. Upstream Point Molate*, LLC, Nos. C-04-3955 & C-05-1605, 2009 U.S. Dist. LEXIS 117944, 2009 WL 4258550, at *3 (N.D. Cal. Nov. 24, 2009) ("[T]here is no evidence that [the receptionist] is a person with sufficient authority to accept personal service on behalf of the [entity]."); *Carey Int'l, Inc. v. Carey Limo Serv., Inc.*, No. 10-12142, 2011 U.S. Dist. LEXIS 108218, 2011 WL 9819989, at *1 (D. Mass. Sept. 22, 2011) (Wolf, J.) ("[A] receptionist does not ordinarily qualify as a corporation's agent.").

Therefore, this action should be dismissed under Rule 12(b)(5) for insufficient service of process.

### D. Alternatively, This Action Should Be Transferred to the District of New Jersey Under the First to File Rule or 28 U.S.C. § 1404(a)

Although dismissal of Maxell's Complaint is the appropriate result, transfer of this action to the District of New Jersey for consolidation with ATL's first-filed action alternatively is proper. *See, e.g.*, *Acuna v. CMH Mfg.*, No. A-11-CA-927-SS, 2011 U.S. Dist. LEXIS 166450, at *12-13 (W.D. Tex. Dec. 19, 2011) (finding transfer to be proper under either 28 U.S.C. § 1404 or the first to file rule). As discussed above, the Court should transfer the action to the District of New Jersey because "[a]s the Fifth Circuit has made clear, the 'first-to-file rule' not only determines which

court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Forté v. Sanofi-Aventis United States*, No. A-11-CA-017 LY, 2011 U.S. Dist. LEXIS 175243, at *9 (W.D. Tex. Mar. 9, 2011).

Alternatively, transfer is warranted under 28 U.S.C. § 1404(a) because (1) venue is proper in the District of New Jersey and (2) the balance of relevant considerations favors transfer.[3] Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "After determining the suit could have been filed in the destination venue, the Court must next focus on whether the party requesting the transfer has demonstrated the 'convenience of parties and witnesses' requires transfer of the action, considering various private and public interests." *Bank v. Palmer*, No. A-13-CA-831-SS, 2014 U.S. Dist. LEXIS 11270, at *7 (W.D. Tex. Jan. 30, 2014) (referencing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) and *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1974)).

"The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious

---

[3] Nonetheless, it is the first-filed court, not this Court, that should make the § 1404(a) determination. *See Yeti Coolers, LLC v. Beavertail Prods.*, LLC, No. 1-15-CV-415 RP, 2015 U.S. Dist. LEXIS 106177, at *9 (W.D. Tex. Aug. 12, 2015) ("once substantial overlap is found between the two cases, the proper course of action for the second-filed court is to transfer the case to the first-filed court. . . . As the Fifth Circuit has made clear, the first-to-file rule not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated. . . . Thus, as our sister court has stated the Fifth Circuit made clear that it is the first-filed court, not this court, that should make the § 1404(a) determination.") (cleaned up).

and inexpensive. . . . The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. . . . Although the *Gilbert* factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive; indeed, the Fifth Circuit has noted none . . . can be said to be of dispositive weight. . . . Despite the wide array of private and public concerns, a court must make a flexible and individualized analysis' in ruling on a motion to transfer venue." *Bank*, 2014 U.S. Dist. LEXIS 11270, at *7-9 (cleaned up).

Here, because ATL is a foreign company, this patent infringement action could have been filed in any district court, including the District of New Jersey. *See Interactive Life Forms, LLC v. Weng*, No. A-12-CA-1182-SS, 2013 U.S. Dist. LEXIS 193772, at *7 (W.D. Tex. Apr. 8, 2013).

Moreover, relevant private and public interest factors heavily favor transfer of Maxell's later-filed patent infringement action to the District of New Jersey. The private factors weigh in favor of transfer because Maxell's wholly-owned subsidiary and Corporate Headquarters in North America reside in the District of New Jersey. Maxell admits that its North American headquarters, Maxell Corporation of America ("MCA"), is located in New Jersey, is a wholly-owned subsidiary, shares a board member with Maxell, is a distributor of Maxell products in the United States, and pays an annual royalty to Maxell. NJ Action, Dkt. No. 16-12 (Washio Decl.) at ¶¶ 5, 6, 7, 8, 10. In particular, both Maxell and MCA admitted their relationship with respect to the sale of lithium ion batteries in the U.S. Maxell admitted that it maintained a sales and marketing subsidiary in the U.S., and MCA admitted that it was Maxell's sales and marketing subsidiary in the U.S. *See* Dkt. Nos. 560 and 562, *IN RE: LITHIUM ION BATTERIES*, No. 4:13-md-02420-YGR (N.D. Cal. Nov.

21, 2014). The District of New Jersey therefore provides easier access to sources of proof, including business records and sales information for damages. Furthermore, the District of New Jersey has authority to compel the attendance of Maxell witnesses. Not only does the District of New Jersey have personal jurisdiction over MCA based on general jurisdiction, the New Jersey court also has personal jurisdiction over Maxell, which is an active plaintiff in another patent action before the court. *See Mondis Technology Ltd. v. LG Electronics Inc.*, No. 2:15-cv-04431-SRC-CLW (D.N.J. filed June 21, 2014). In addition, having the New Jersey court decide the merits of the parties' claims would require the least amount of traveling and costs for potential Maxell witnesses who may work at Maxell's North America Headquarters or have to travel to Maxell's North America Headquarters frequently for business trips. Also, Maxell is familiar with the local rules and procedures of the District of New Jersey because it is an active plaintiff in a pending patent infringement action there.

On the contrary, this District is not convenient to either party because neither ATL nor Maxell are incorporated or registered to do business in the Western District Texas; neither do the parties have any offices or employees in this District. Also, neither Maxell nor ATL have witnesses or documents located in Texas that are necessary for the parties' dispute. ATL Decl. ¶ 24.

The public factors also weigh in favor of transfer. For example, this action would further congest this Court, which already has a heavy caseload. The Western District of Texas is the busiest hub for patent litigation in the country, featuring nearly a fifth of the country's new patent cases in 2020. This District saw 857 patent cases filed in 2020 and 793 of which went to this Court. This Court's caseload represents 19.5% of the country's new patent cases for the year. On the other hand, the District of New Jersey only saw 153 patent cases filed in 2020 and has substantially lighter caseload than the Western District of Texas. *See* Ex. 3-C. In addition, as mentioned above,

neither ATL nor Maxell has sufficient contacts with this District; thus, there is no local interests to have localized interests decided at home. Also, as the seventh biggest venue for patent cases, the District of New Jersey is familiar with patent laws that govern the parties' disputes. *See id.*

Because the relevant private and public interest factors clearly favor transfer, the Court should therefore transfer this action to the District of New Jersey to join the first-filed New Jersey Action in the interests of justice and judicial economy.

### E.    Alternatively, This Action Should Be Stayed Pending Resolution of the New Jersey Action

Alternatively, the Court should stay this action pending resolution of the New Jersey Action because the first-filed court decides "whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Forté*, 2011 U.S. Dist. LEXIS 175243, at *9; *Sirius Comput. Sols.*, 138 F. Supp. 3d at 827; *Mann Mfg., Inc.*, 439 F.2d at 408; *Cadle Co.*, 174 F.3d at 606; *Sutter Corp.*, 125 F.3d at 920. Moreover, the parties' motions have been fully briefed in the NJ Action on ATL's Motion to Enjoin Maxell's Later-Filed Infringement Action, No. 2:21-cv-08461-KM-MF, Dkt. Nos. 7, 17, 22, 23 (fully briefed as of May 12, 2021); ATL's Motion for Alternative Service, *id.* at Dkt. Nos. 10, 33, 39 (fully briefed as of June 1, 2021); and Maxell's Motion to Dismiss or Transfer ATL's Amended Complaint, *id.* at Dkt. Nos. 52, 56-60 (fully briefed as of June 29, 2021). The Court should therefore conserve its and the parties' resources by staying this action pending the resolution of the parties' motions in the District of New Jersey. *See, e.g., W. Gulf Mar. Asso. v. ILA Deep Sea Local 24, etc.*, 751 F.2d 721, 729 n.1 (5th Cir. 1985); *Scorpcast LLC v. MG Freesites Ltd.*, No. 6:20-cv-00877-ADA, Dkt. No. 56 (W.D. Tex. June 21, 2021) (transferring later-filed action to first-filed district).

III.    **CONCLUSION**

For the foregoing reasons, this Court should grant ATL's Motion to Dismiss Maxell's Complaint. In the alternative, ATL requests that this Court transfer the case to the District of New Jersey or stay this case pending resolution of the proceedings in the District of New Jersey.

Dated: July 2, 2021                                  Respectfully Submitted,

                                                     GREENBERG TRAURIG, LLP

                                                     */s/ Craig A. Duewall*
                                                     Craig A. Duewall
                                                     Texas Bar No. 24025334
                                                     300 West Sixth Street, Suite 2050
                                                     Austin, Texas 78701
                                                     Telephone: 512-320-7200
                                                     Facsimile: 512-320-7210
                                                     Email: duewallc@gtlaw.com

                                                     ATTORNEYS FOR DEFENDANT
                                                     AMPEREX TECHNOLOGY LIMITED

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of July, I caused a true and correct copy of the foregoing document to be filed with the Court's CM/ECF system and thus served on all parties with counsel of record.

*/s/ Craig A. Duewall*
Craig A. Duewall