*PUBLIC VERSION*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

**MAXELL HOLDINGS, LIMITED,**
**Plaintiff,**

*v.*

**AMPEREX TECHNOLOGY LTD.,**
**Defendant.**

**6:21-cv-347-ADA**

## MEMORANDUM OPINION & ORDER DENYING ATL'S MOTION
## TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER OR STAY [ECF No. 10]

Came on for consideration this date is Defendant Amperex Technology Limited's ("ATL's") Motion to Dismiss or, in the Alternative, Transfer or Stay, filed September 2, 2021. ECF No. 10 (the "Motion"). Plaintiff Maxell Holdings, Limited ("Maxell") filed an opposition on November 5, 2021, ECF No. 35, to which ATL replied on November 22, 2021, ECF No. 42. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **DENIES** ATL's Motion.

### I. BACKGROUND

In March 2020, Maxell contacted ATL and alleged that ATL's lithium-ion battery ("LIB") products infringe its U.S. Patent Nos. 8,691,446, 9,077,035, 9,166,251, and 9,350,019 (collectively, the "Asserted Patents"). ECF No. 10-1 ¶¶ 7, 8; see *Amperex Technology Limited v. Maxell, Ltd.*, No. 2:21-cv-08461-KM-MF, ECF No. 12 ¶ 25 (D.N.J.) ("ATL Am. Compl."). According to ATL, from May 2020 until February 2021, ATL and Maxell engaged in discussions regarding the Asserted Patents, including licensing discussions. ECF No. 10-1 ¶ 9; see ATL Am. Compl. ¶ 26. By March 26, 2021, no resolution was reached between the parties. ECF No. 1 ¶ 9. On April 6, 2021, ATL filed a declaratory judgment action (the "DJ Action") in the U.S District Court for New Jersey, seeking a judgment that ATL does not infringe the Asserted Patents.

1

*Amperex v. Maxell*, No. 2:21-cv-08461-KM-MF (D.N.J.) (the "NJ Docket"). Two days later, Maxell filed this Action with a complaint essentially mirroring the alleging that ATL infringes the Asserted Patents. ECF No. 1 (the "Complaint").

Maxell is a Japanese corporation with its principal place of business in Japan. *See* ECF No. 1 ¶ 11. ATL is a Chinese corporation with its principal place of business in Hong Kong, SAR China. *Id.* ¶ 12. According to Maxell, "ATL designs, manufactures, sells, and markets rechargeable LIB cells, packs, and systems for companies worldwide. Its LIB products are used in a variety of products such as laptop computers, smart phones, digital media players, digital cameras and camcorders, cordless tools, and various consumer electronics." *Id.* ¶ 16. ATL purportedly holds itself out as "the world's leading producer and innovator of lithium-ion batteries." *See id.* ¶ 17.

The Complaint alleges that "[t]he claims of the Asserted Patents cover ATL's LIBs, their components, and processes related to the same"; the Complaint refers to these as the "Accused Products" or "Infringing LIBs." ECF No. 1 ¶ 62. The Complaint states that the Accused Products are incorporated in various consumer devices and it explicitly identifies five exemplary battery cells "among the Infringing LIBs," utilized in devices from Google, Dell, DJI, and Huawei. *Id.* Those exemplary cells are identified by cell number: 465867, 575577N, 785075, 633360, and 2798B7 (the "Exemplary Accused Products"). *Id.*

On April 15, 2021, ATL sought relief from the District of New Jersey (the "DNJ"), asking it to enjoin Maxell from prosecuting this Action. NJ Docket, ECF No. 7. On June 8, 2021, Maxell specially appeared in the DJ Action to request dismissal of ATL's amended complaint. NJ Docket, ECF No. 53. In that motion, Maxell requested that the DNJ: decline to exercise jurisdiction because the DJ Action was an improper anticipatory suit; dismiss the DJ Action for lack of personal

jurisdiction and/or improper service; or transfer the DJ Action to this Court under 28 U.S.C. § 1404(a). On September 2, 2021, ATL filed its Motion in this Action.

On September 27, 2021, the DNJ issued an opinion finding the DJ Action to be an improper anticipatory suit, denying ATL's motion to enjoin this Action, transferring the DJ Action to this Court, and denying all of Maxell's grounds for dismissal. *See Amperex Tech. Ltd. v. Maxell, Ltd.*, No. 21-08461 (KM) (MF), 2021 U.S. Dist. LEXIS 184253 (D.N.J. Sep. 27, 2021) (the "DJ Transfer Order"). The Parties continued to brief ATL's Motion here while ATL petitioned the U.S. Court of Appeals for the Federal Circuit for a writ of mandamus reversing the DJ Transfer Order. On January 14, 2022, the Federal Circuit denied the mandamus petition, finding that the DNJ did not abuse its discretion in transferring the DJ Action. *See In re Amperex Tech.*, No. 2022-105, 2022 U.S. App. LEXIS 1124 (Fed. Cir. Jan. 14, 2022).[1] That opinion did not, however, reach the question of whether the DNJ properly analyzed the convenience transfer factors under § 1404(a). *Id.* at *6–*7.

On January 25, 2022, after ATL's bid for mandamus was denied, the Parties agreed to consolidate this Action and the DJ Action "for all purposes, including trial" and the Court entered an order to that effect. *See* ECF No. 57. The Parties did not suggest how, if at all, consolidation would affect ATL's pending Motion. That Motion is now ripe for judgment. This Court's discussion of that Motion follows.

---

[1] ATL also appealed from the DJ Transfer Order's denial of ATL's request for injunctive relief. ATL dropped that appeal soon after the Federal Circuit denied its petition for mandamus. *See* Order, *Amperex Technology Limited v. Maxell, Ltd.*, No. 22-1017, ECF No. 30 (Fed. Cir. Jan. 21, 2022).

## II. PERSONAL JURISDICTION

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. The plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). When a court assesses a non-resident defendant's challenge to personal jurisdiction without holding an evidentiary hearing, the plaintiff bears the burden of presenting "sufficient facts" for a *prima facie* case of personal jurisdiction. *Thiam v. T-Mobile USA, Inc.*, No. 4:19-CV-00633, 2021 WL 1550814, at *1 (E.D. Tex. Apr. 20, 2021); *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). The court accepts as true allegations in the plaintiff's complaint, except when they are contradicted by the defendant's affidavits. *Thiam*, 2021 WL 1550814, at *1. However, "genuine, material conflicts" between the facts in the parties' affidavits and other evidence are construed in the plaintiff's favor. *Id.*

In matters unique to patent law, Federal Circuit law—rather than the law of the regional circuit—applies. *See In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (citing *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999)). Whether this Court has personal jurisdiction is just such an issue, so Federal Circuit law governs the substantive questions of law. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).

Establishing *in personam* jurisdiction in a federal question case is a two-step inquiry (at least when the implicated federal statute does not provide for service of process). First, a court asks whether a defendant is subject to the jurisdiction of a state court of general jurisdiction under state law. Fed. Rule Civ. Proc. 4(k)(1)(A). This requires measuring the reach of the long-arm statute of the state in which the federal court sits. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Second, the court asks if the exercise of personal jurisdiction would exceed the limitations

of due process. *Id.* Since the Texas long-arm statute extends to the limits of due process, *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002), the Court need only focus on the due process aspects of the personal jurisdiction question, *see Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

The constitutional inquiry requires the court to consider (1) whether a defendant has purposefully availed itself of the protections and benefits of the forum state by establishing "minimum contacts" with the state, and (2) whether the exercise of jurisdiction comports with traditional notions of "fair play and substantial justice." *Tanfoglio*, 615 F.3d at 584. Minimum contacts are satisfied by contacts creating either general or specific jurisdiction. *Thiam*, 2021 WL 1550814, at *2 (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

A corporation is only subject to general jurisdiction when its contacts with the state are so "continuous and systematic" they render it "essentially at home" in the forum state. *Daimler AG*, 571 U.S. at 138–39. Ordinarily, a corporation is only subject to general jurisdiction where it is incorporated or has its principal place of business. *Daimler AG*, 571 U.S. at 137, 139 n.19.

"The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff has the burden to show minimum contacts exist under the first two prongs, but the defendant has the burden of proving the exercise of jurisdiction would be unreasonable under the third. *Elecs. For Imaging Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). The Federal Circuit has counseled, however, that the exercise of jurisdiction is unreasonable only in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the

dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174 (1985)).

The test of reasonableness and fairness is "a multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996) (citing *Burger King*, 471 U.S. at 477). This test requires balancing the following factors: "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies." *Viam Corp.*, 84 F.3d at 429.

### B.    Analysis

The Complaint alleges that "ATL is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district." ECF No. 1 ¶ 15. Though the Complaint put forward a theory of jurisdiction under Federal Rule of Civil Procedure 4(k)(2), ECF No. 1 ¶ 52, Maxell's opposition casts it aside in favor of reliance on ATL's contacts with Texas, *see* ECF No. 35 at 9 n.5. Maxell's opposition is silent on general jurisdiction. *See* ECF No. 42 at 1. And The Court does not reach Maxell's stream-of-commerce theory, having contented itself that ATL's direct contacts with Texas satisfy the Federal Circuit's three-prong jurisdictional inquiry.

**\*PUBLIC VERSION\***

    1.    <u>ATL Purposefully Directed Its Activities at Texas</u>

The Court finds that ATL engaged in business purposefully directed at Texas because ATL: (1) sold Accused Products to Dallas-based ███████; (2) shipped Accused Products to Texas for other customers; and (3) corresponded with, sent samples to, and presented information on Accused Products to ████████ in Austin.

First, ATL does not dispute that it shipped ████████ LIBs purchased by Texas-based ████████ to Dallas and/or El Paso, generating ████████ in revenue for ATL. *See* ECF No. 35 at 11. ATL suggests that these sales are owed little weight because ████ is ATL's only direct customer in Texas. ECF No. 42 at 5. It also argues that these sales to █████ are "miniscule in comparison to the over 6 billion LIBs that ATL has shipped to customers globally since 2015." ECF No. 42 at 5. ATL cites no authority suggesting that these factors diminish the impact of ATL's business with █████. *Accord In re TC Heartland LLC*, 821 F.3d 1338, 1343 n.4 (Fed. Cir. 2016) (finding no abuse of discretion where district court found defendant purposefully availed itself of Delaware even though only 2% of defendant's products were shipped to Delaware), *rev'd on other grounds*, *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017).

The Court would, in any event, refuse to find that the sale of █████ LIBs to one Texas-based customer, shipped to Texas, is "too attenuated to establish minimum contacts with [Texas]." *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1380 (Fed. Cir. 2017) (finding that offering one free sample to a resident of the district was too attenuated a contact to establish jurisdiction). ATL also diminishes the weight of these contacts because "███████████████ ██████████████████." ECF No. 42 at 5. This argument dies on the vine; Maxell seeks damages for past infringement, including infringement occurring before 2019.

Second, ATL does not dispute that it shipped ███████ LIB units to Texas since 2015, generating more than ███████ in revenue. ECF No. 42 at 5. Yet ATL notes that "such shipments were directed to Texas by ATL's customers, *all but one of whom* ███████ *are located outside of Texas*." ECF No. 42 at 5 (emphasis added).[2] It seems, then, that ATL discounts these shipments because the customers directing shipments to Texas are not Texas residents. This Court will not hold that a defendant purposefully directs infringing sales only at those fora where its customers are incorporated or maintain a principal place of business. This is the kind of "mechanical test" the Federal Circuit has rejected in evaluating the location of an infringing sale for purposes of personal jurisdiction. *See N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) ("We hold that to sell an infringing article to a buyer in Illinois is to commit a tort there (though not necessarily only there).").

For example, one of ATL's customers is ███. *See* ECF No. 35-2 at 2–5; ECF No. 42-4 at 20:19–21:7. Since 2015, ATL has made ███████ LIB shipments, supposedly at ███████ behest, to a Texas address. *Id.* These are not "isolated shipments." *AFTG-TG,* 689 F.3d at 1362. These contacts with Texas are not "sporadic at best." *Id.* This is infringing conduct, running at a steady pace, directed at Texas, and for the benefit of a customer, ███, with a substantial presence in this District. *See, e.g.*, *Uniloc 2017 LLC v. Apple Inc.*, No. 6-19-CV-00532-ADA, 2020 U.S. Dist. LEXIS 109037, at *10 (W.D. Tex. June 19, 2020) (███████████████████). It is unreasonable to contend that this activity is not purposefully directed at Texas.

---

[2] ATL also posits that "[w]here the customer dictates the location for delivery, such cannot be considered purposefully directed activity by ATL." *Id.* (citing *AFTG-TG, LLC v. Nuvoton Tech. Corp.,* 689 F.3d 1358, 1362 (Fed. Cir. 2012)). The Court rejects that proposition. Caselaw is riddled with opinions finding specific jurisdiction where a defendant sent an infringing product to a customer in the forum and the customer dictated the location of delivery.

Third and finally, ATL concedes that it shipped twenty units of Cell No. 575577N, one of the Exemplary Accused Products, to this District. ECF No. 42 at 4. ATL sent these units to ███ ███ Austin ███████████████████████.” *Id.* ATL also concedes that ATL personnel ███████████████████████████████. *Id.* And it is undisputed that, since 2015, ███ ████████████████████████████████████████████████████ ██████████████████████. *Id.* The small number of units shipped is, in this Court's judgment, still sufficient to establish that ATL purposefully availed itself of the privilege of conducting activity within Texas. For reference, the Federal Circuit found a defendant's importation of only five allegedly infringing samples—merely for exhibition at a trade show, not for sale—sufficient to establish jurisdiction under Rule 4(k)(2). *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009).

ATL purposely directed this conduct at Texas and, as explained below, the Court is satisfied that Maxell's claim arise out of or relate to this conduct.

2.   Maxell's Claims Arise Out of or Relate to ATL's Activities in Texas

The Complaint accuses ATL of infringing the Asserted Patents under at least 35 U.S.C. § 271(a) because it "manufactures, makes, uses, sells, offers for sale, and/or imports" the Accused Products directly in the United States. *E.g.*, ECF No. ¶ 16. And, again, the Complaint defines the Accused Products as "ATL's LIBs, their components, and processes related to the same." *Id.* ¶ 62. The Court is satisfied that Maxell's direct infringement claims arise directly out of ATL's sale of ███████ LIBs to Texas-based ██████ and those additional LIBs sales shipped to Texas on behalf of ATL's customers ████████████████████████████. *See* ECF No. 35-2. ATL challenges this conclusion on two grounds. First, it posits that Maxell's claims cannot arise from these sales because ███████ did not purchase the Exemplary Accused Products, and shipments to Texas for other customers did not necessarily include Exemplary Accused Products.

ECF No. 42 at 5. That is of no moment. Maxell accused all ATL's LIBs, *see* ECF No. 1 ¶ 62—LIBs sold to ███████ and others fall within that ambit. The Court will not disregard these sales even if they do not include products the Complaint identifies with more specificity. The Exemplary Accused Products are just that—exemplary. *See id.* The Court will not, at this stage, demand specific identification of every Accused Product.

The Court is also satisfied that Maxell's claims arise out of or relate to ATL's Texas-centric contacts ████. The Complaint specifically identified Cell No. 575577N as an Accused Product and alleges that it is "widely sold and distributed in Texas," at least as a component of ████ ███████████████████████████. ECF No. 1 ¶¶ 25–29. ATL has not controverted that allegation. ATL concedes ████████████████████████████████████████████████ ████. It is not difficult to discern a causal link between ATL generating interest in Cell No. 575577N ██████ in Texas and the subsequent sale in Texas of ██████████ incorporating that cell. ████ may never have sold ██████████ incorporating Cell No. 575577N absent █████████ ███████████████████████████████████. *See Ford Motor Co. v. Montana 8th Jud. Dist. Ct.*, 141 S. Ct. 1017, 1029 (2021) (proposing a causal link between Ford's advertising the Ford Explorer in Montana; and a product liability claim alleging that a defective Ford Explorer caused a crash in Montana, though that particular Explorer was not designed, made, or sold there); *see also id.* at 1033 (Alito, J., concurring) (finding the same). Thus, Maxell's claims arise out of or relate to ATL's contacts ██████████.

      3.   <u>Exercising Jurisdiction is Reasonable and Fair</u>

Because Maxell met its burden under the first two steps of the Federal Circuit's three-prong test, "the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Freescale Semiconductor, Inc. v. Amtran Tech. Co., Ltd.*, A-12-CV-644-LY, 2013 WL 12121034, at \*2 (W.D. Tex. June 12, 2013). It is a "rare" case where jurisdiction is rendered unreasonable by

other considerations. *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1351 (Fed. Cir. 2016) (citing *Burger King*, 471 U.S. at 477). "In determining this fundamental fairness issue, the Court must examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Oehring v. Spike Brewing, LLC*, No. 6:19-CV-00444-ADA, 2020 WL 3001052, at *4 (W.D. Tex. June 4, 2020) (citing *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993)).

ATL attempts to meet its burden with sparse arguments. It states that it is not "reasonable or fair" to exercise jurisdiction over ATL because it is a Hong Kong corporation with no presence in Texas: no registration to do business; no offices or employees, no leases or property ownership, no Texas bank account, and no Texas tax payments. ECF No. 42 at 6. ATL also asserts that it has far fewer contacts in this District than Maxell has in New Jersey, and Maxell argued those contacts were insufficient to establish personal jurisdiction in New Jersey. *Id.*

Maxell has the better argument. As to the first fairness factor, the burden on ATL is reasonable when balanced against the weight of ATL's conduct in Texas. "[J]urisdiction in this Court is neither unfair nor unreasonable where [ATL] 'knew the destination of its products, and its conduct and connections with [Texas] were such that it should have reasonably have anticipated being brought into court there.'" *Semcon IP Inc. v. TCT Mobile Int'l Ltd.*, No. 2:18-CV-00194-JRG, 2019 WL 2774362, at *5 (E.D. Tex. July 2, 2019) (quoting *Nuance*, 626 F.3d at 1234). Further, "the inconvenience of litigating in a foreign state is by no means extraordinary in the federal courts." *Oehring*, 2020 WL 3001052, at *4. In this case, both parties are foreign entities, and litigating in Texas does not pose any additional burden that would not exist if this case had

moved forward in the DNJ, which has already declined jurisdiction over ATL's declaratory judgment action.

As to the second fairness factor, Texas also has a strong "interest in adjudicating injuries that occur within this state." *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20- CV-008876-ADA, 2021 WL 3931910, at *4 (W.D. Tex. Sept. 1, 2021) (citing *Beverly Hills Fan Co.*, 21 F.3d at 1568). Here, ATL shipped LIBs to Texas-based customers and customers with a large presence in Texas. Maxell has accused those LIBs of infringing Maxell's patents, and therefore Texas has an interest in adjudicating this dispute

As to the third fairness factor, Maxell's interest in convenient and effective relief may only be served by this Court exercising personal jurisdiction over ATL, given that the DNJ has already declined jurisdiction in this case. "[T]his Court 'is part of the exclusive mechanism established by Congress for the vindication of patent rights." *Semcon IP*, 2019 WL 2774362, at *5 (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995)). Thus, Maxell has a strong interest in obtaining relief through the Court.

As to the fourth fairness factor, the judicial system's interest in efficient resolution of controversies favors exercising personal jurisdiction over ATL because there is no other forum with a greater interest in or ability to resolve the parties' dispute.

And as to the fifth fairness factor, Texas has an interest in furthering fundamental social policies by discouraging infringement of intellectual property rights. *Cf. Canon, Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:18- CV-00546-JRG, 2020 WL 1478356, at *4 (E.D. Tex. Mar. 25, 2020) ("[T]he United States has an interest in furthering fundamental substantive social policies by discouraging infringement of intellectual property rights.").

Maxell argues that, in continuing to prosecute the DJ Action in this Court, "ATL is purposely availing itself of this Court." ECF No. 35 at 10. The Court is not sure it is appropriate to consider such post-suit conduct in evaluating whether ATL has minimum contacts with Texas. But, as far as reasonableness goes, it is challenging for ATL to establish that exercising jurisdiction over it here would be unreasonable when ATL continues to prosecute its own DJ Action before this Court.

In sum, the Court holds that it has personal jurisdiction over ATL for Maxell's claims, and exercising that jurisdiction is reasonable. The Court **DENIES** Maxell's Motion as to its 12(b)(2) grounds.

### III. SERVICE OF PROCESS

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(5) provides that a party may file a motion to dismiss for insufficient service of process. A district court has "broad discretion to dismiss an action for ineffective service of process." *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994).

#### B. Analysis

After filing its Complaint on April 8, 2021, Maxell endeavored to serve ATL with process at its headquarters in Hong Kong. On April 27, 2021, Li Yuen Tung, a process server authorized to serve legal process in Hong Kong, served ATL, purportedly at the direction of counsel for Maxell. ECF No. 6 ¶¶ 2–7. Mr. Tung delivered a package containing the relevant documents for service to an ATL employee—identified as "Ms. Wong"—at its Hong Kong headquarters, whereupon the employee affixed ATL's company seal upon one of the documents acknowledging receipt. *Id.* ¶ 7. The returned executed summons was duly filed with the Court on May 6, 2021. *See generally id.*

**\*PUBLIC VERSION\***

Ms. Wong has attested that her responsibilities include "receiving deliveries in the office." ECF No. 10-5 ¶ 4. She also attested that Mr. Tung "did not explain the content of the envelope" handed to Ms. Wong, she did not know what was inside when she accepted it and, even after opening it, she did not understand the contents of the documents inside. *Id.* ¶¶ 7–11. Ms. Wong was allegedly not authorized to accept service of legal process for ATL. *Id.* ¶ 12.

ATL contends that this Action should be dismissed under Federal Rule of Civil Procedure 12(b)(5) because Maxell did not properly serve ATL. ATL identifies two alleged errors in Maxell's service: Maxell's means of service were improper; and the individual who "purportedly accepted service" was not authorized to do so. ECF No. 10 at 13. This Court disagrees on both counts.

Under Federal Rule of Civil Procedure 4(h), a foreign corporation served abroad must be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h). The Parties focus on Rule 4(f)(1), but the Court finds that service was proper under Rule 4(f)(2)(A).

### 1. Federal Rule of Civil Procedure 4(f)(1)

Under Federal Rule of Civil Procedure 4(f)(1), a foreign corporation may be served abroad "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f); *Castillo v. Hongjin Crown Corp.*, Civil Action No. DR-08-CV-00031-AML-VRG, 2008 U.S. Dist. LEXIS 130686, at \*5 (W.D. Tex. Oct. 27, 2008). Use of the Hague Convention procedures, when available, is mandatory if the documents must be transmitted abroad to effect service. *Id.*; *see Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1998).

The Parties apparently agree that Article 10 of the Hague Convention applies at Rule 4(f)(1). The Court departs from the Parties, though, in holding Article 10 does not represent an

*PUBLIC VERSION*

"internationally agreed means of service . . . authorized by the Hague Convention." Fed. R. Civ. P. 4(f). For context, "[t]he primary method of service authorized by the [Hague] Convention requires service through a member state's 'Central Authority.' . . . The Central Authority of each member state may then execute service pursuant to its own internal laws, or according to a particular method requested by the requesting state." *James Avery Craftsman, Inc. v. Sam Moon Trading Enters.*, No. SA-16-cv-00463-OLG, 2018 U.S. Dist. LEXIS 219083, at *9 (W.D. Tex. July 5, 2018). Yet that is not "the only method of service approved by the Convention." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017).

Article 10 of the Convention permits other means of service bypassing the Central Authority, but signatory countries may opt out of Article 10 (in part or in whole). *See id.* at 1513.

Article 10 reads:

> Provided the State of destination does not object, the present Convention shall not interfere with
>
> a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
>
> c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Service Abroad of Judicial and Extrajudicial Documents Convention Done at The Hague art. 10, Nov. 15, 1965, 20 U.S.T. 361. Article 10(a) discusses service by mail. Articles 10(b) and (c) encompass the concept of "personal service," in which a plaintiff directly engages a "judicial officer[], official[] or other competent person[]" of the receiving country to effect service. But Article 10 merely permits—"or in the words of the Convention, does not 'interfere with'"—postal

*PUBLIC VERSION*

service or personal service only "so long as the receiving country does not object." *Brockmeyer v. May*, 383 F.3d 798, 803 (9th Cir. 2004).

The Parties dispute whether Hong Kong objected to Article 10's provision of personal service. ECF No. 10 at 14. Justice Jon Streeter of the California Court of Appeal penned a thorough treatment of this issue in *Whyenlee Indus. Ltd. v. Superior Court*, holding that Hong Kong did *not* object to Articles 10(b) and (c). 33 Cal. App. 5th 364, 244 Cal. Rptr. 3d 840 (2019). The analysis in *Whyenlee* is compelling; this Court adopts it as its own and concludes that Hong Kong does not object to Articles 10(b) and (c).

That does not end the inquiry. To be sure, Article 10 permits personal service. But it does not authorize it. This follows from *Water Splash*, in which the Supreme Court determined that Article 10(a) of the Hague Convention permitted international service by mail and then remanded so Texas state court could determine whether Texas law authorized service by such means. 137 S. Ct. at 1513. The *Water Splash* plaintiff sued its former employee, Menon, in Texas state court, asserting several torts. *Id.* at 1507. "Because Menon resided in Canada, [the plaintiff] sought and obtained permission to effect service by mail." *Id.* Menon did not appear and so the Texas court entered default judgment. *Id.* Menon then moved to set aside judgment, arguing that she had not been properly served. *Id.* The Supreme Court granted certiorari to resolve the question of whether the Hague Convention "permits service through postal channels." *Id.* at 1508.

The Court held that Article 10 does not "affirmatively authorize[] service by mail." *Id.* at 1513. Rather, it simply does not "interfere with . . . the freedom" to serve documents that way— barring any objection from the receiving country. *Id.* "Otherwise-applicable law" must still authorize service by mail. *Id.* (citing *Brockmeyer*, 383 F.3d at 803). Seemingly content that Canada did not object to Article 10(a), *id.* at 1512 n.7, the Court remanded back to state court to determine

"whether Texas law authorizes the methods of service used by [the plaintiff]," *id.* at 1513. That is, the relevant "[o]therwise-applicable law" is the law of the forum where suit was filed.

The *Water Splash* Court's interpretation of Article 10(a) applies equally to Articles 10(b) and (c). So, while these Articles may permit personal service, they do not "affirmatively authorize[]" it so as to invoke Rule 4(f)(1). The Court must peer past Rule 4(f)(1) for a source of law authorizing personal service abroad.

2.      <u>Federal Rule of Civil Procedure 4(f)(2)(A)</u>

Rule 4(f)(2) allows service by certain prescribed methods reasonably calculated to give notice, provided there is either "no internationally agreed means," or "an international agreement allows but does not specify other means." As noted above, Article 10 provides that, barring the receiving country's objection, the Hague Convention "shall not interfere with . . . the freedom" to conduct personal service. Because Hong Kong has not objected to Article 10, the Hague Convention "allows"—in the argot of Rule 4(f)(2)—for personal service in Hong Kong without explicitly authorizing it. The Court proceeds, then, to determine whether the remainder of Rule 4(f)(2) supplies such authority.

Rule 4(f)(2)(A) provides that a foreign corporation may be served abroad "by a method that is reasonably calculated to give notice . . . as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A). Maxell's opposition offers one source of Hong Kong law. Maxell avers that, "[u]nder Hong Kong's Companies Ordinance, '[a] document may be served on a company by leaving it at, or sending it by post to, the company's registered office.'" ECF No. 35 at 18 (quoting Hong Kong Companies Ordinance, No. 827 (2014)). That ordinance defines "document" to include "a summons, notice, order and any other legal process." *Id.* (quoting Hong Kong Companies Ordinance, No. 2 (2014)).

17

*PUBLIC VERSION*

The only authority upon which ATL relies to dispute Maxell's characterization of Hong Kong law is an unpublished opinion from the U.S. District Court for the Southern District of Iowa, which ATL quotes as stating: "[S]ervice of process on a Hong Kong corporation is parallel to service of process on a corporation based in the United States." ECF No. 10 at 15 (quoting *Rennenger v. Manley Toy Direct L.L.C.*, No. 4:10-cv-00400, 2013 U.S. Dist. LEXIS 197078, at *8 (S.D. Iowa July 18, 2013)). ATL omits the first half of that sentence: "In the present case, the parties do not dispute that service of process on a Hong Kong corporation . . . ." *Rennenger*, 2013 U.S. Dist. LEXIS 197078, at *8. *Rennenger*, lacking any analysis on how service of process operates in Hong Kong, is not a persuasive authority on the issue. Yet ATL erects the rest of its argument upon *Rennenger*, citing several U.S. opinions analyzing "service of process on a corporation based in the United States" as if Hong Kong applies the same standards. That authority falls with *Rennenger*.

The Court will apply the Hong Kong Companies Ordinance, finding it to be a primary source of Hong Kong law. *See also Tow v. Rafizadeh (In re Cyrus II P'ship)*, 392 B.R. 248, 258 (Bankr. S.D. Tex. 2008) (holding that the Hong Kong Companies Ordinance provides for service of process by leaving process at the defendant's registered office). The Companies Ordinance only required Maxell to leave process at the ATL's registered address in Hong Kong. ATL does not dispute that Maxell's process server served the correct documents to the correct address. And ATL concedes that Ms. Wong "acknowledged receipt of the envelope delivered to ATL's location according to ATL's normal package handling procedure." ECF No. 10 at 15–16. Because Mr. Tung left process at ATL's registered office, the Court is satisfied that service was proper under the Companies Ordinance. Mr. Tung was not, as ATL contends, required to "inquire[] about Ms.

*PUBLIC VERSION*

Wong's full legal name, her title and relationship with ATL, or whether Ms. Wong had any authority at all to accept service on behalf of ATL." ECF No. 10 at 15.

Rules 4(h)(2) and 4(f)(2)(A) authorized Maxell's method of service because Hong Kong law provided for personal service,[3] Maxell completed personal service as Hong Kong law specified, and such service was reasonably calculated to give ATL notice of suit (and did in fact do so).[4] Accordingly, this Court must **DENY** ATL's Motion to Dismiss under Rule 12(b)(5).

### IV. FIRST-TO-FILE RULE

#### A.    Legal Standard

Where two pending district court cases substantially overlap, the first-to-file rule provides that the second-filed court may exercise its discretion and refuse to hear the case. *See, e.g.*, *Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 603 (5th Cir. 1999). Importantly, district courts maintain broad discretion apply the first-to-file rule. *See, e.g.*, *Hart v. Donostia LLC*, 290 F. Supp. 627, 630 (W.D. Tex. 2018) (first citing *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971); and then citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)); *see also Cadle Co.*, 174 F.3d at 603 (5th Cir. 1999) ("The first-to-file rule is a discretionary doctrine . . . ."). One recognized exception to the first-to-file rule is when "a party files a declaratory judgment action in anticipation of a suit by its adversary, which can create an

---

[3] Rule 4(h)(2) states that foreign corporations may be served "in any manner prescribed by Rule 4(f) for serving an individual, *except personal delivery under (f)(2)(C)(i)*," but courts have nonetheless permitted personal service of a foreign corporation "provided that personal delivery is prescribed by the foreign country's laws for service in that country in an action in its courts of general jurisdiction," as it is here. *Nuance*, 626 F.3d at 1238.

[4] Service was reasonably calculated to give the defendant notice of the suit and, in fact, did. *See InterMoor Inc. v. Wilson*, No. 4:14-CV-01392, 2016 U.S. Dist. LEXIS 36479, at *22 (S.D. Tex. Mar. 22, 2016) (finding service reasonably calculated to give notice where process served to defendants' receptionist in Singapore before the receptionist affixed the defendants' corporate stamp to the acknowledgment receipt).

opportunity for forum-shopping." *True View Surgery Ctr. One, L.P. v. Goodman Glob. Holdings, Inc.*, No. H-15-3287, 2016 U.S. Dist. LEXIS 22593, at *19 (S.D. Tex. Feb. 24, 2016).

### B. Analysis

This Action substantially overlaps with the DJ Action but is second-filed. According to Fifth Circuit practice, the first-filed court should resolve issues related to the first-to-file rule and, to better facilitate that, the second-filed court can dismiss, stay, or transfer the second-filed action. *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). ATL requests dismissal, stay, or transfer consistent with that practice. *See* ECF No. 10 at 4–6, 16–20. This Court **DENIES** those requests as moot because the DNJ, the first-filed court, invoked the anticipatory-suit exception to the first-to-file rule and transferred the DJ Action to this District after ATL filed its Motion. *See Amperex Tech. Ltd. v. Maxell, Ltd.*, No. 21-08461 (KM) (MF), 2021 U.S. Dist. LEXIS 184253, at *25 (D.N.J. Sep. 27, 2021). ATL also asked the Court to stay this Action pending resolution of its appeals to the Federal Circuit from that transfer order. ECF No. 42 at 9. Seeking to reverse the transfer order, ATL petitioned the Federal Circuit for a writ of mandamus. That was unsuccessful. *See In re Amperex Tech.*, No. 2022-105, 2022 U.S. App. LEXIS 1124 (Fed. Cir. Jan. 14, 2022). ATL also appealed the DNJ's decision to deny ATL's request to enjoin Maxell from proceeding with this Action. *See* ECF No. 42 at 9 n.2. But ATL dropped that bid before reaching judgment. So that request to stay is also **DENIED-AS-MOOT**.

### V. TRANSFER UNDER § 1404(a)

### A. Legal Standard

In patent cases, motions to transfer under § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. Courts evaluate these factors based on the situation that existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to

the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### B.  Analysis

ATL's abbreviated transfer analysis does not satisfy § 1404(a)'s preliminary question or show that the DNJ is clearly more convenient.

#### 1.  Where This Case "Could Have Been Brought"

Section 1404(a) permits transfer to any other district where this Action "might have been brought." The movant must show that the transferee district is a proper venue that has personal jurisdiction. *See Chirife v. St. Jude Med., Inc.*, No. 6:08-CV-480, 2009 U.S. Dist. LEXIS 50482, 2009 WL 1684563, at *1 (E.D. Tex. June 16, 2009). ATL's attempt to answer this threshold question is deficient. ATL merely argues that, because ATL is a foreign company, "this patent infringement action could have been filed in any district court, including the District of New Jersey." *Id.* at 18 (citing *Interactive Life Forms, LLC v. Weng*, No. A-12-CA-1182-SS, 2013 U.S. Dist. LEXIS 193772, at *7 (W.D. Tex. Apr. 8, 2013)). While that may suffice to establish venue

in the DNJ, it does not show that the DNJ has personal jurisdiction. This Court's jurisdiction springs from ATL's business contacts with Texas; ATL has not made any analogous showing regarding its contacts with New Jersey. ATL cannot, therefore, carry its burden to show that Maxell could have brought this Action in the DNJ.

To the extent ATL would suggest that its filing the DJ Action in New Jersey constitutes a source of minimum contacts with New Jersey, this Court rejects that contention. Having found that action an improper anticipatory suit, the DNJ transferred the DJ Action here. Endorsing that improper filing as a source of minimum contacts is a half-a-step away from permitting ATL to "consent" to jurisdiction in New Jersey for purposes of its § 1404(a) motion. The Supreme Court roundly rejected that approach. *See Hoffman*, 363 U.S. at 344. For similar reasons, this Court will not permit an anticipatory DJ Action to act as a foothold establishing jurisdiction in New Jersey. (There are also questions as to whether this Action arises from or relates to ATL's filing of the DJ Action.)

The Court **DENIES** ATL's Motion to transfer under § 1404(a) for failing to satisfy the threshold question. Yet, as described below, this Court alternatively **DENIES** transfer on the ground that ATL has not shown that the DNJ is clearly more convenient.

2.   Balance of Conveniences

ATL asserts that the private interest factors favor transfer to the DNJ because Maxell's wholly owned subsidiary, Maxell Corporation of America ("MCA"), resides in the DNJ. ECF No. 10 at 18. According to ATL, MCA distributes Maxell's product in the United States and pays royalties to Maxell. *Id.* ATL alleges that, in view of this relationship, the DNJ "provides easier access to sources of proof, including business records and sales information for damages." *Id.* at 19. Moreover, the DNJ would be more convenient for Maxell witnesses, and it also has the authority to compel their attendance. *Id.* (The Court will not double-count MCA witnesses by

*PUBLIC VERSION*

considering them under both the witness factors. Accordingly, the Court will treat them as willing witnesses.) As to the public factors, ATL posits that this Court is congested because of the number of patent cases. *Id.* ATL further contends this District has no local interest.

This Court finds that the sources-of-proof and willing-witnesses factor at most only slightly favor transfer, the practical-problem factor favors maintaining this Action here, and all other factors are neutral. This is not enough to establish the DNJ as the clearly more convenient forum.

The Court is inclined to deem the sources-of-proof and willing-witnesses factors neutral because ATL has not given the Court any reason to conclude that MCA's evidence and witnesses will not be cumulative of Maxell's evidence and witnesses. ATL only alleges that MCA may maintain information regarding damages. ECF No. 10 at 19. The Court does not doubt that. But Maxell owns MCA and, by dint of that relationship, may already possess the MCA documents (or information therein) to which ATL refers. And Maxell almost certainly has witnesses more capable of speaking to damages than an employee of one of its distributors. Which is to say, inconvenience need not be visited upon MCA or its personnel if MCA's evidence is cumulative of Maxell's.

Even assuming MCA has unique documents and knowledge, it is well-established that accused infringers produce most of the evidence in infringement cases. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). MCA's unique information, if it exists, will be meager relative to the amount of information ATL (and the Parties together) produce. And, finally, the Court is troubled that ATL has not specifically identified even one potential MCA witness despite months of venue discovery. The Court accords MCA's witness(es) little weight because ATL has not identified how many there are, their names, or where they actually reside.

In its reply, ATL cites Maxell's corporate representative as testifying that ███████████ ███████ ECF No. 42 at 7 (citing ECF No. 42-1 at 66:20–67:24). Maxell's corporate

representative, Kenji Nakamura, testified that, ████████████████████████████
███████████████████████████████████████ ECF No. 42-1 at 66:24–
67:5. He testified that ████████████████████████████████████████
███████████████████ *Id.* at 67:6–12. And Mr. Nakamura ████████████████
███████████████████████████ *See id.* at 67:13–24.
Mr. Nakamura did not further testify about ██████████████████████████████.
But based on this testimony, ATL alleges that "[t]hese individuals are likely relevant witnesses as
their positions in middle management, ███████████████████, will likely have relevant
discoverable information related to the practice of the Asserted Patents." ECF No. 42 at 7. Mr.
Nakamura's testimony does not support this allegation. ATL adduced no evidence from Maxell's
corporate representative suggestive of any relevant information in these ████████████████
possession. Based on the foregoing analysis, the Court finds that the sources-of-proof and willing-
witnesses factors are either neutral or only slightly favor transfer.[5]

The "practical problems" factor favors maintaining this Action here. ATL has not sought
to dismiss or transfer the DJ Action now consolidated with this Action. Barring some change, that
action will proceed in this Court. Had ATL even moved to transfer the DJ Action back to New
Jersey along with this Action, this Court is not confident it could oblige. As touched on above,
ATL must show that the transferee court has personal jurisdiction to establish its entitlement to

---

[5] ATL also suggests that the location of Maxell's customers in Illinois, Arizona, and California
has any relevance. Yet ATL has not suggested that any of these customers have willing witnesses
and neither this Court nor the DNJ can compel the testimony of witnesses in Illinois, Arizona, and
California. Moreover, even if the patentee's customers possessed relevant information, "[t]he
comparison between the transferor and transferee forum is not altered by the presence of other
witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d
1338, 1340 (Fed. Cir. 2014).

transfer.[6] Because the DJ Action is a declaratory judgment action, ATL must show that the DNJ has jurisdiction over Maxell. Judge McNulty, author of the DJ Transfer Order, remarked that there were "serious questions" about that prospect. DJ Transfer Order, 2021 U.S. Dist. LEXIS 184253, at *19. At the time of that pronouncement, ATL had not served Maxell. And, as of now, ATL has not offered this Court evidence that Maxell directed enforcement activities particular to the Asserted Patents at New Jersey such that personal jurisdiction is proper there. *See Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1138 (Fed. Cir. 2018). Because the DJ Action, which involves the same patents, accused products, and parties as this Action, is proceeding in this Court, judicial economy—and this factor—favor keeping this Action here with its companion DJ Action.

The docket-congestion factor is neutral. ATL's comparison of the number of cases in this District and the DNJ is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *In re Genentech*, 566 F.3d at 1347. Moreover, Judge McNulty noted that the DNJ "has been in judicial emergency status as a result of unfilled vacancies." DJ Transfer Order, 2021 U.S. Dist. LEXIS 184253, at *24. The Parties offered no time-to-trial statistics for the Court's review, so this factor remains neutral.

ATL suggests that Maxell offering "relevant LIBs" for sale in New Jersey as components in the Nintendo Switch has some effect on the transfer analysis. Yet "[t]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). ATL has not given this Court reason to treat the nationwide sale of patentee's product any different. Relatedly, ATL argues that

---

[6] The first-to-file rule is not an independent source of authority for transfer. *In re SK Hynix Inc.*, 847 F. App'x 847, 854 (Fed. Cir. 2021). So ATL must establish its entitlement to transfer under § 1404(a), including satisfying the threshold question of whether the New Jersey could have been brought in the DNJ. *Id.*

**\*PUBLIC VERSION\***

the "local community surrounding MCA . . . located in New Jersey certainly ha[s] an interest in litigation involving a local big business." ECF No. 42 at 9. Yet the Federal Circuit counsels that the local-interest factor regards the "significant connections between a particular venue and the events that gave rise to a suit"—that is, the design, development, and testing of the accused products. *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020). ATL has not made a showing that any of that conduct occurred in New Jersey.

Because two of the convenience factors only slightly favor transfer at best, but all others are either neutral or favor retaining this Action, ATL has not shown that the DNJ is more clearly more convenient. *Cf. In re Vistaprint Ltd.*, 628 F.3d 1342, 1346–47 (Fed. Cir. 2010) (affirming the denial of transfer because, though the defendant's subsidiary was in the transferee forum, the practical-problems factor overwhelmed the convenience factors). This Court **DENIES** ATL's Motion to transfer this Action to the DNJ under § 1404(a).

## VI. CONCLUSION

For the foregoing reasons, it is **ORDERED** that ATL's Motion is **DENIED**.

SIGNED this 9th day of February, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE